MELINDA HAAG (CABN 132612)
United States Attorney

MIRANDA KANE (CABN 150630)
Chief, Criminal Division

JOSEPH FAZIOLI (CABN 275564)
Assistant United States Attorney

   150 Almaden Boulevard, Suite 900
   San Jose, California 95113
   Telephone: (408) 535-5595
   Facsimile: (408) 535-5066
   joseph.fazioli@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 11-00955 DLJ |
|    Plaintiff, ) | UNITED STATES' SENTENCING MEMORANDUM |
| v. ) | |
| LINDA GOMEZ, ) | COURTROOM:<br>The Honorable D. Lowell Jensen |
|    Defendant. ) | SENTENCING DATE & TIME:<br>April 11, 2013 at 10:00 a.m. |

     On October 25, 2012, defendant Linda Gomez pled guilty to all 17 counts of an indictment charging her with wire fraud (Count 1-14) and mail fraud (Counts 15-17). There is no plea agreement in this case. The defendant over a two year period embezzled over $110,000 from her employer, the Sisters of the Holy Names of Jesus and Mary Catholic Convent in Los Gatos, then squandered it on frivolous shopping sprees. Gomez's crime was one of pure greed–she stole this money from the Sisters of the Holy Name of Jesus and Mary Catholic Convent despite the fact that she and her husband were combined (between her Convent salary and his pension) bringing home almost $100,000 a year. Gomez's appalling criminal conduct merits a substantial custodial sentence. For

reasons detailed below, the United States respectfully requests that this Court impose a Guidelines sentence of 30 months imprisonment.

## BACKGROUND

Defendant Linda Gomez (maiden name Linda Surrett) was employed from 1985 to 2010 by the Sisters of the Holy Names of Jesus and Mary Catholic Convent ("the Sisters of the Holy Names Convent") in Los Gatos, California. See Probation Department Presentence Report ("PSR") ¶7. The Sisters of the Holy Names is a non-profit organization headquartered in Portland, Oregon that provides services to Catholic Nuns as well as the poor and disadvantaged in the community. The organization has several convents within the United States, including the 60 acre Los Gatos facility that employed Gomez. (PSR ¶6). Gomez worked for the Los Gatos Sisters of the Holy Names Convent in various administrative capacities, including serving as the Director of Food Services. (PSR ¶7). Gomez was never a Catholic Nun nor a member of a religious order.

During her employment, Gomez was authorized to make purchases for the Sisters of Holy Names Convent such as food, equipment, and supplies. (PSR ¶7). Gomez was responsible for making purchases for the 75 Catholic Sisters and 60 lay employees at the Convent. The vast majority of the Catholic Sisters were retired, elderly, or required living assistance (the average age was 76, with many Sisters in their 90's). (PSR ¶7). Consistent with their vow of poverty, these elderly Catholic Sisters turned over all of their income (including any Social Security income received) to the Convent. (PSR ¶6). The Catholic Sisters each received a monthly allowance of $200, a portion of which they entrusted Gomez with for the purchase of personal items. (PSR ¶6).

The Sisters of the Holy Names Convent provided a company Visa credit card to Gomez for the purpose of paying for convent-related expenses ("the Convent Visa card"). (PSR ¶7). Gomez made purchases using the Convent Visa Card, her PayPal account, a petty cash account, and vendor accounts. (PSR ¶9)

//
//

<u>The Scheme to Defraud</u>

Between no later than March 2008 until her resignation in May 2010, Gomez embezzled from Sisters of the Holy Names Convent over $110,000 using various methods, including obtaining fraudulent reimbursements or credits for products she falsely claimed she had purchased for the Convent and its Nuns. (PSR ¶¶9-12). The Probation Department correctly characterizes Gomez's scheme to defraud as "multifacted," and it took several forms:

- Gomez purchased items online and had them shipped to a family member's address. The Sisters of the Holy Names Convent then paid for these purchases, which Gomez had falsely represented were for the Convent. (PSR ¶¶9-12).

- Gomez submitted to the Sisters of the Holy Names Convent expense reports falsely stating that she had made convent-related online purchases. As supposed proof of these purchases, Gomez attached to her expense reports a printout of the viewing page of an online shopping cart for various webpages. In reality, Gomez had not actually made the purchases for which she received payments. In several instances, Gomez canceled the purchases after printing out the copy of the viewing page of the online shopping cart. In other instances, Gomez made purchases in quantities and amounts that were significantly less than that for which she had received payments. Gomez also forged or altered vendor receipts and submitted them in support of payment for supposed purchases. (PSR ¶¶9-12).

- Gomez knowingly returned or canceled purchases for which she had received payment. Gomez then diverted the refunds on those purchases for her personal use, including to pay off her personal credit card. (PSR ¶¶9-12).

- Gomez submitted multiple copies of an expense receipt for a single purchase and subsequently obtained payments in excess of the actual purchase price. As the Probation Department discusses in the PSR, "Gomez also purchased for the Sisters directly. A Sister would go to Gomez and request that she make purchases for a birthday or retirement party, or a personal item. Gomez would go to the needed store and purchase

the item(s) and then submit the same receipt to both the Convent and the Sisters' accounts for reimbursements, which was a form of 'double dipping.'"  (PSR ¶9).

In total, Gomez stole more than $110,000 from the Sisters of the Holy Name Convent.  In addition to embezzling more than $47,000 in cash, Gomez also fraudulently diverted over $50,000 in Convent funds for personal expenses such as jewelry, high-end cutlery, purses, shoes, kitchen appliances, and numerous purchases on the QVC and Home Shopping Networks.  (PSR ¶12).

Gomez's crime was not the result of financial hardship, and the Probation Department has correctly identified "no mitigating factors" in this case.  (PSR Sentencing Recommendation at 2).  In arguing for a 27 month Guidelines prison sentence for Gomez, the Probation Department noted that:

> The defendant also recalled a fine upbringing of her own with compassionate parents and where she wanted for nothing.  It appears that Gomez has had a lifetime of exceptional family experiences, including the employment at the convent.  However, while she enjoyed the love and trust of the convent Sisters, who took a vow of poverty and relinquished all their income to the Convent, Gomez was steadily embezzling roughly $50,000 a year on top of her $69,000 annual salary and her husband's approximately $2,500 monthly retirement income.  Together the couple legitimately earned nearly a $99,000 annual household income.  (PSR Sentencing Recommendation at 2).

## DISCUSSION

The Probation Department's calculation of Linda Gomez's Sentencing Guidelines results in an adjusted total offense level of 18 and Criminal History Category I.  (PSR ¶¶ 30, 36).  The sentencing range for imprisonment under this Guidelines calculation is 27 to 33 months.  The Probation Department recommends that the Court impose a low end Guidelines sentence of 27 months along with other enumerated conditions.  The United States has reviewed the final pre-sentence report (PSR) and has no objection to either the Guidelines calculation or the factual information contained in the PSR.  For reasons stated below, the United States recommends that Linda Gomez receive a Guidelines prison term of 30 months along with the other conditions enumerated by the Probation Department.

//

4

**A.     The Defendant's Applicable Sentencing Guidelines Range**

For the reasons stated below, the United States agrees with the Probation Department's calculation of Linda Gomez's Guidelines.

(1)     <u>Base Offense Level/Loss Amount</u>

The United States agrees with the Probation Department that Linda Gomez's base offense is seven and that she should receive an eight level enhancement pursuant to United States Sentencing Guideline §2B1.1(b)(a)(E) due to her victims' loss amount being greater than $70,000.  (PSR ¶21).  Although they raised numerous objections to the Probation Department's draft presentence report, the defense does not dispute the application of this loss amount enhancement in this case.  <u>See</u> Defendant's March 11, 2013 Letter to Probation Department Regarding Draft Presentence Report ("Defendant's 3/11/13 PSR Objections Letter").

(2)     <u>Sentencing Enhancement for Misrepresentation Regarding Acting on Behalf of a Religious Institution</u>

The United States agrees with the Probation Department that Linda Gomez should receive a two level increase pursuant to United States Sentencing Guideline §2B1.1(b)(a)(E) given that her fraud involved her misrepresenting that she was acting on behalf of a religious institution.  (PSR ¶22).  The defense does not dispute this enhancement.  (<u>See</u> Defendant's 3/11/13 PSR Objections Letter).  In this case, Gomez falsely represented to vendors and others that she was making purchases on behalf of the Convent and the Sisters, when in reality she was not making such purchases on their behalf but was instead embezzling Convent funds for the personal gain of herself and her family members.  Gomez also submitted false invoices to the Convent representing that she was providing a benefit to that religious organization.  The Probation Department correctly cites Ninth Circuit case law which supports the application of the enhancement in this case. (PSR ¶22, referencing <u>United States v. Treadwell</u>, 593 F.3d 990, 1005-9 (9th Cir. 2010); <u>United States v. Lambert</u>, 498 F.3d 963, 968-71 (9th Cir. 2007)).

//

(3) Sentencing Enhancement for Vulnerable Victims

The United States agrees with the Probation Department that Linda Gomez should receive a two level enhancement pursuant to United States Sentencing Guideline §3A1.1(b)(1) since her crime involved vulnerable victims. (PSR ¶23). The defense disputes the application of this enhancement. (See Defendant's 3/11/13 PSR Objections Letter). A two level enhancement under § 2B1.1(b)(2)(B)(10) is appropriate in a case, such as this one, which involved embezzlement related to funds which the defendant knew were provided by "retired, elderly and assisted care recipient nuns." (PSR ¶23). See e.g. United States v. Williams, 441 F.3d 716, 725 (9th Cir. 2006)(affirming vulnerable victim enhancement in case involving a 87 year old victim who was financially inexperienced).

(4) Sentencing Enhancement for Abuse of Private Trust

The United States agrees with the Probation Department that Linda Gomez should receive a two level enhancement for abuse of a position of private trust pursuant to United States Sentencing Guideline §3B1.3. (PSR ¶ 24). The defense does not dispute this enhancement. (See Defendant's 3/11/13 PSR Objections Letter). The Probation Department correctly notes that Linda Gomez "held a position of managerial discretion that allowed her to significantly facilitate and conceal the offense." (PSR ¶ 24). Gomez over the course of her fraudulent scheme egregiously took advantage of the trust that the Convent and the Catholic Sisters has placed in her as an 24 year employee.

**B.  A Guidelines Sentence of 30 Months Imprisonment for Linda Gomez is Reasonable and Appropriate under 18 U.S.C. § 3553**

Linda Gomez's criminal conduct merits a Guidelines range, 30 month sentence of imprisonment. Gomez embezzled over $110,000 from the Sisters of the Holy Name Convent – a religious organization dedicated to helping elderly Catholic Nuns as well as providing services to the poor and disadvantaged. Gomez squandered the money she stole from the Convent on frivolous purchases. Very troubling is the fact that Gomez's fraud and ongoing shopping spree deprived the Convent of the use of these funds during a

1  time period (March 2008 to May 2010) marked by great economic suffering in the
2  community at large.  Of further concern is the fact that Gomez lied to the Convent when
3  initially confronted about her embezzlement.[1]  (PSR ¶11 - "On May 3, 2010, Gomez met
4  with [] Convent representatives and counsel.  They presented a selection of their findings.
5  <u>Gomez denied any wrong doing</u>.  She was presented with a Letter of Suspension, pending
6  further investigations.  <u>Gomez stated she was appalled by the accusations</u>, and
7  resigned.")(emphasis added).  In light of the above, a 30 month sentence of imprisonment
8  is reasonable and appropriate.

9    A 30 months prison sentence for Linda Gomez would comply with the purposes
10 set forth in 18 U.S.C. § 3553(a)(2), as required by 18 U.S.C. § 3553(a).  First, a sentence
11 of 30 months imprisonment would reflect the seriousness of the defendant's offense, Wire
12 and Mail Fraud, promote respect for the law, and provide just punishment for this offense.
13 <u>See</u> 18 U.S.C. § 3553(a)(2)(A).  Gomez stole over $110,000 from the Sisters of the Holy
14 Name Convent.  Her criminal activities were not a one-time mistake, but rather a pattern
15 of criminal conduct which took various forms, was sophisticated, and spanned at least a
16 two year period from March 2008 until her resignation in May 2010.  A substantial
17 custodial sentence - 30 months - is an appropriate sanction in this case for the defendant
18 given: (1) the seriousness of her offenses; (2) the substantial amount that she stole; (3)
19 that fact that she stole money from a religious institution dedicated to serving the poor
20 and disadvantaged; and (4) the lengthy period of time which she engaged in
21 embezzlement.

22    Second, a sentence of 30 months imprisonment would afford adequate deterrence
23 of further criminal conduct–both for the defendant <u>and</u> the public, as 18 U.S.C. §
24 3553(a)(2)(B) requires.  The need for public deterrence should be an important

---

[1] Notwithstanding the defendant's false statements to the Convent in 2010, the United States agrees with the Probation Department that the defendant, in subsequently pleading guilty to all charges, has demonstrated an acceptance of responsibility sufficient to entitle her to a three level reduction pursuant to United States Sentencing Guideline §3E1.1.  (PSR ¶¶ 28-29).

7

consideration in this case.  Linda Gomez stole over $110,000 from her employer over several years, then squandered the money on a shopping spree.  In these difficult economic times, there will be temptations for individuals to engage in similar fraudulent schemes.  By imposing a significant custodial sentence, this Court will demonstrate both to this defendant and the public that fraud and embezzlement "does not pay" and will instead result in substantial prison time.

Furthermore, a sentence of 30 months imprisonment would protect the public from further criminal conduct by the defendant.  See 18 U.S.C. § 3553(a)(2)(C).  Linda Gomez's pattern of dishonesty demonstrates that she does not respect the truth, and has no compunction in defrauding those who entrusted her with their money.

A 30 month sentence for Linda Gomez would also serve as a "just punishment" under § 3553(a)(2)(A).  Such a disposition would be proportional with similar Guidelines sentences that other Judges have imposed in analogous Northern District of California cases involving defendants who embezzled from their employers.  See e.g. United States v. Bernadette Escue, CR 07-00610 JF (Guidelines prison sentence imposed on defendant who embezzled $90,000 from her high technology employer and spent proceeds on personal expenses).

**C.  Restitution**

The United States agrees with the Probation Department that the defendant should be required to pay restitution totaling over $110,000.

//
//
//
//
//
//
//
//

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court sentence Linda Gomez to 30 months imprisonment in addition to the other terms and conditions enumerated by the Probation Department.

DATED: April 4, 2013             Respectfully submitted,

                                        MELINDA HAAG
                                      United States Attorney

                                        /s/
                                        JOSEPH FAZIOLI
                                        Assistant United States Attorney